B. M. BEHRENDS BANK, Appellant, v. ESTATE of Fred W. WENDT, deceased, Appellee.

No. 7338–A.

District Court, Alaska. First Division, Juneau.

Aug. 22, 1956.

378

M. E. Monagle (of Robertson, Monagle & Eastaugh), Juneau, Alaska, for appellant.

Joseph A. McLean, Juneau, Alaska, for appellee.

KELLY, District Judge.

This is an appeal from an order of the Juneau Probate Court dated June 24, 1955, granting a family allowance to Margaret M. Wendt, the decedent's widow, in the sum of $4,000 exclusive of any mortgage or lien, after the funeral expenses, expenses of last illness and of administration have been provided for.

Counsel for the appellant claims that the order of the Commissioner was invalid for the reason that the requirements of the statutes were not complied with. Section 61–12–2, A.C.L.A.1949, provides in part as follows:

> "*Award for support.* After the filing of the inventory, should the deceased have died leaving a widow or minor children, the commissioner,

upon such notice as may be by him fixed, upon being satisfied that the funeral expenses, expenses of last illness and of administration have been paid or provided for, and upon petition for that purpose, shall award and set off to the surviving widow or minor children property of the estate not exceeding the value of Four Thousand Dollars ($4,000.00), exclusive of any mortgage or mechanic's, laborer's, or other lien upon the property * * *."

and Section 61–9–1, A.C.L.A.1949, provides:

*"Time for filing inventory: Verification: Contents.* An executor or administrator shall within one month from the date of his appointment, or such further time as the commissioner may allow, make and file with the commissioner an inventory, verified by his oath, of all the real and personal property of the deceased which shall come to his possession or knowledge. (CLA 1913, § 1633; CLA 1933, § 4392.)"

Counsel for appellant contends that

(a) No proper inventory, verified by oath of administrator, was filed within one month of his appointment.

(b) That no proper petition was filed herein for family allowance, as such petition is a personal right which the widow alone has and one which only she could exercise.

(c) That widow must show she was the lawful wife of deceased at the time of his death and is his lawful widow, which she has failed to do herein.

The evidence in the case shows that when Fred W. Wendt died in Juneau, Alaska, on September 6, 1954, he was indebted to the B. M. Behrends Bank in the sum of $1,000, the balance on a demand promissory note dated April 8, 1954, which was originally in the sum of $2,000 but which had been reduced by payments to $1,000.

The evidence further shows that on August 30, 1954, the said Fred W. Wendt borrowed an additional sum of $850 from the B. M. Behrends Bank and gave said bank his promissory note in the amount of $850; that Fred W. Wendt was ill at the time of this loan and required an operation and intended to enter St. Ann's Hospital in Juneau for this purpose; and that he reported to the Bank that this $850 was to be used to enable him to pay for medical and hospital services in connection with his illness.

Testimony of Mr. W. T. Dunn of the B. M. Behrends Bank was to the effect that the deceased entered the hospital the day he made the $850 loan or the day after and that he was in the hospital five days at the most when he died.

It appears to be undisputed that the $850 borrowed by decedent was placed in his commercial account and that at the time of his death a few days later the balance of said commercial account was $978.99.

There is no proof in the record of any withdrawals from the bank account of the deceased after the $850 was borrowed and deposited therein and the date of his death September 6, 1954. There is no evidence that this $850 so borrowed, or any part of it, was used to hire or pay doctors or pay any part of the hospital bill.

Letters of administration were issued herein on September 20, 1954. Petition for appointment of appraisers was filed October 19, 1954, and they were appointed the same day. These appraisers filed oath on November 26, 1954, stating therein "that we will honestly, faithfully and impartially appraise the estate of the said deceased which may be exhibited to us to the best of our ability and according to law." On the same day, November 26, 1954, an "Inventory Appraisal" signed by the three appraisers was filed. Likewise on the same day, November 26, 1954, there was filed by the administrator a "Petition to Sell Personal Property" verified under oath, which sets forth among other allegations,

> "That as said administrator he has caused to be made and filed herein an inventory and appraisement of said estate, which said inventory and appraisement are hereby referred to and made a part hereof;"

On December 15, 1954, the administrator filed a "Return of Sale of Personal Property, Petition for Confirmation, and Petition for Allowance of Preferred Claims" and set forth therein in paragraph 5 a list of collections received and anticipated in said estate and in paragraph 6 a list of expenditures made to preferred claimants and persons employed to conduct the public sale, and on the same day there was filed a statement entitled "Estate of Fred W. Wendt—Estimated Liquidation." This document was a list of assets, expenses and liabilities in said estate and was broken down into subheadings reading as follows:

Anticipated Collections
Less Payments Made to 12/15/54
Estimated Administrative & Preferred Claims to be Paid
Less Anticipated Claim under Widow's Exemption
Balance for Distribution
Unsecured Creditors
Ratio of Unsecured Claims to Estimated Amount Available

and showed the ratio of unsecured claims to estimated amount available to be 23.26%, which, incidentally, would indicate that the estate was insolvent. In this statement, among the preferred claims, appear two items for St. Ann's Hospital, one being hospitalization, $110.65, and the other an item listed as "Donation to Building Fund—not paid—$100.00"; also an item due the Juneau Clinic in the sum of $15. In the "Return of Sale etc." filed December 15, 1954, in paragraph 6 thereof, is listed a payment made to preferred claimant as follows: "Ambulance fee for deceased before death, $7.50."

These three items also appear (together with funeral bill of $425) in Schedule 6 of the inventory appraisal above-referred to.

There was introduced in evidence respondent's Exhibit A, which was a copy of a letter dated October 4, 1954, which states in part as follows:

"1.   Right of offset was taken on the Fred Wendt DBA Ideal Paint Store account; not on your Administrator's account.   Our action, of course did not leave any funds to go into that account.

"2.   Fred Wendt had three notes here:

"A 'Demand' car contract for $659.50.   We paid this off together with $4.50 interest.   This frees the car for sale and is an advantage to the estate as the car is worth considerably more than the loan balance.

"A Demand note for $2,000.00 which was being paid by charge to account of $200.00 per month plus interest.   It had been reduced to $1,000.00, when Mr. Wendt passed away.   We applied $314.99 of the account to this note, leaving a balance of $685.01 plus interest from September 8, 1954.

"A 90 day note dated August 30, 1954 for $850.00 on which no reduction has yet been made. Interest is also due from August 30.

"3.   $664.00 plus $314.99 totals $978.99 or balance of account.

"4.   We were advised by our Counsel that we were entitled to right of offset on the demand notes, but exercised it only after waiting about ten days for some surviving relative to check with us re payment of the notes.   No one came in until you furnished us with the proofs of claim forms."

This letter was signed by Mr. Dunn, Vice President of the Bank, the witness above referred to.

This would further support this Court's conclusion that no part of the $850 loaned by B. M. Behrends Bank to the deceased was ever used for the purpose of paying any of the expenses of the last illness or for any other purpose except as part of the funds used as an offset against the other notes as above set forth.

The claim for the $850 note has no priority over general claimants. Appellant's claim that it should be allowed as an "Expense of the last illness" is without merit and is denied.

The petition for authority to pay family allowance was filed by the administrator and was set for hearing on the 13th day of June, 1955, at which time it was continued until June 24, 1955. On June 24th the affidavit of Mrs. Margaret Wendt in support of the petition for widow's allowance was filed. It appears that counsel for the B. M. Behrends Bank contested the award as prayed for and the court held that petition of administrator and the affidavit of the widow were sufficient and came within the provisions of the law and the intent of the law.

Counsel for appellant goes to some length in his brief arguing the right of appellant Bank to set off decedent's bank account at the date of his death against the moneys owed by decedent to the Bank. Counsel further argues at great length that the demand car contract note for $659.50 could also be properly set off against the balance on deposit at the time of death.

Exhibit A shows that the full amount of the car contract note amounting to $664 was so set off and further that $314.99, being the entire balance of the account, was set off against the balance of the demand note for $2,000 which still leaves a balance unpaid on the said demand note of $685.01 plus interest from September 8, 1954.

The record discloses the letter written by the attorney for the administrator dated November 4, 1954, which states:

"I have inspected the two notes payable to the B. M. Behrends Bank along with the other papers in the file, and find them as stated in Bank's letter to you dated October 4th.

"With regard to the bank's right to do this, especially under the circumstances on the day you instructed it to set up the deposit in your name as Administrator, I must, in my opinion, rely on the law as stated in American Jurisprudence, Sec. 634, Volume 7—

"Effect of Death of Depositor. The bank's right of offset or application to the payment of a depositor's indebtedness exists as against the administrator or representative of the depositor, attempting to recover the deposit after his death. According to the weight of authority, the fact that the debt owing to the bank is not mature does not, where the estate is insolvent, prevent the bank from setting off the debt against the deposit of the decedent. And in a case where the debt matured the day after the death of the depositor, the bank was allowed to set it off against the deposit.

"In studying cases I could find only one very old case which might conceivably support us, but this one dealt with an obviously solvent estate.

"It is my opinion, therefore, that we will be unable to prevail in any action against the bank to restore the deposits in question. Consequently it behooves you as administrator to proceed with the filing of an inventory, and to petition the probate court for an immediate sale under the best possible terms, either by public auction or private sale."

This Court believes counsel's advice was correct and that the Bank was within its legal rights in making the offset, and same is approved. Backer v. City Bank & Trust Co., 180 Ga. 672, 180 S.E. 604, 108 A.L.R. 769.

Insofar as this appeal is concerned, it appears to the Court that the main question here involved is the question of whether the probate court entered a proper order under the provisions of Sec. 61–12–2, A.C.L.A.1949, and the pertinent part of the order which is appealed from is as follows:

"and the court having heard the evidence, finds that all the allegations of said petition are true and that said petition should be granted.

"It is hereby Ordered that there be allowed and paid to the said widow for her support the sum of $4,000.00 exclusive of any mortgage or lien after the funeral expenses, the expenses of last illness, and administration have been paid or provided for."

It can readily be seen that if no proper inventory was filed herein before said petition was filed, it would have been prematurely filed and could not be heard. Further, if no proper petition was filed therein, the same could not be heard.

While it is true that there is no separate document filed herein which is entitled "Inventory" verified by the administrator, it seems to the Court that the inventory appraisal filed herein by the three appraisers and made a part of the administrator's Petition to Sell Personal Property, which petition is verified under oath, together with the items set forth in paragraphs 5 and 6 of the Return of Sale of Personal Property, which was also verified under oath by the administrator, and the document introduced in evidence and filed in connection therewith entitled "Estimated Liquidation" taken together would comply with the statutes, and the probate court in accepting the same after the thirty days

was acting within the authority of the statute which provides for the filing within one month from the date of his appointment and "such further time as the commissioner may allow."

In this connection this Court finds that this was sufficient to comply with the statutory requirement and that a properly verified inventory, substantially complying with the law, was filed and accepted by Probate Court.

A widow's allowance or allowance for family support has for its purpose the setting off of a certain amount of money or property so that the surviving wife (and dependent children if there be any) might continue to have support and to provide necessities therefor during the period of administration. The manner of setting apart such allowance, the amount thereof, and priority of the claim differ in different jurisdictions. In some this takes precedence over all claims, even administration expenses and funeral bills as well as of last illness. In others, as here, it can be set aside only when these have been paid or provided for and the order of the Probate Court so states.

In deciding these issues the construction most favorable to the widow should be given to the record or evidence and to any inference which may be drawn from such record or evidence.

Appellant's contention that only the widow can make the petition in the opinion of this Court is without merit. Had the Legislature so intended it would have been easy for them to so state. A petition by an administrator for authority to set apart and pay such widow's allowance is sufficient to comply with the provision of the Act requiring a "petition for that purpose" and this Court so holds.

The Probate Court required the affidavit of the widow in support of the petition and adjourned the hearing for this purpose. This affidavit speaks for itself and there is no proof that the facts stated therein are untrue and in the

absence of such proof this Court must hold that Margaret M. Wendt is the legal widow of the deceased; that the petition considered by the Probate Court complied with the statute; and that the order allowing same was proper.

This Court finds that the offset made by Behrends Bank was proper; that the $850 loan deposited in deceased's account was part of the bank balance of deceased and was used for this offset; that no part of the $850 loan was used to pay any expenses of last illness of deceased, and that same constitutes merely a general claim against the estate.

This Court further finds the inventory filed as above set forth substantially complies with the statute; that the petition complies with the law, was filed after inventory and was supported by the affidavit of the lawful widow of said deceased.

This Court therefore finds that the order of the Probate Court of June 24, 1955, from which this appeal is taken, is a proper order and same is sustained.